GULOTTA, Judge.
In this child custody and support matter, the father appeals from a judgment awarding custody of the two minor children to the mother and ordering him to pay $500.00 per month support; to maintain both children on a policy of hospitalization insurance; and to pay one-half of the cost of their schooling. We affirm.
The parties, who formerly lived together but have never married, are the natural parents of a five year old girl and a three year old boy. Following the breakup of their relationship, the mother sued for custody and support, but continued the matter indefinitely after she and the father entered, on November 7, 1983, into a written, out-of-court agreement on joint custody, support and education of the children. The father has formally acknowledged the children.
*271 On June 13, 1984, the father filed a “Rule for Contempt”, alleging that the mother had failed to bring the children to school timely, pursuant to the settlement agreement. The mother thereafter filed a “Motion to Set Child Support”, which was heard with the pending contempt motion. On July 18, 1984, the trial judge awarded custody of the children to the mother subject to the father’s visitation rights, specified the father’s child support obligations, and further outlined a schedule for school attendance.
The judgment awarding “care, custody and control” of the minor children to the mother provides that the father will have overnight visitation with both children during the summer months on Tuesdays, Fridays, and alternate weekends. During the school term, the father has overnight visitation with his son Fridays and alternate weekends, and limited visitation with him on Tuesdays. Overnight visitation with the daughter during the school term is on alternate weekends only. In oral reasons, the trial judge specifically noted that his judgment was based on what he thought best for the children.
Appealing, the father contends the trial judge erred in awarding sole custody of the children to the mother instead of implementing the plan of joint custody as set forth in the agreement of November, 1983. He further argues that the trial judge abused his discretion in awarding an increase in child support absent evidence of any change in circumstances.
LSA-C.C. Art. 245 provides that where custody of an illegitimate child formally acknowledged by both parents is sought, it shall be awarded in accordance with LSA-C.C. Art. 146, which sets forth a preference for joint custody in both parents, according to the best interest of the children. LSA-C.C. Art. 146(A)(2), however, permits an award of custody to either parent upon the court’s consideration of the factors involved in the case. LSA-C.C. Art. 146(C)(2) further provides that the presumption in favor of joint custody may be rebutted by showing that it is not in the best interest of the child after consideration of the factors enumerated therein.[1] Furthermore, as this court pointed out in Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983), even the phrase “joint custody” does not necessarily mean a “fifty-fifty sharing of time” between the parents, but rather each case depends on the child’s age, the parents’ availability and desires and other factors.
Applying these authorities to the instant case, we conclude the trial court’s custody award in favor of the mother, sub *272 ject to the father’s frequent visitation of the children, is in their best interest. In essence, the provisions of the judgment are quite similar to those of the parents’ own prior agreement, although the trial judge has given the mother greater control in scheduling the children’s schooling and has afforded her more time with her daughter and son during the school year.[2] In light of the evidence indicating that the mother has more flexibility in her part-time work, as opposed to the father’s more regimented schedule as a salaried City employee, we find no error in the trial'judge’s placement of these children of tender years with the mother for a greater period of time.
Turning now to the father’s argument concerning the amount of child support, we likewise find no error.
The mother, who has a Bachelor’s degree in music and a Master’s degree in planning, is presently employed part-time as a harpist at a New Orleans hotel. She also earns commission income by obtaining grant money for clients involved in the arts, and is part owner of a not-yet-profitable recording studio. She listed her take-home pay as $1,343.00 per month, subject to expenses for the two minor children in the amount of $1,460.00 per month, although the trial judge concluded that the expenses were closer to $1,000.00 per month.
On the other hand, the father has a Bachelor’s degree in business administration and has nearly completed work on his Master’s degree in planning. He works full-time as a planner with the City of New Orleans and earns a. gross salary of $2,779.00 per month which, after tax and pension deductions, amounts to a net income of approximately $1,844.00 per month. He listed his expenses at approximately $1,841.00 per month, including the full cost of the children’s schooling expenses.
The trial judge’s award ordering the father to pay $500.00 per month in child support, together with one-half of the $254.00 per month school expenses and total health insurance expenses for the children at $35.00 per month, amounts to a total child support obligation of $662.00 per month payable by the father.[3] Considering the father’s stable employment and his total net monthly income, in contrast to the mother’s less stable earnings and her greater time required with the children, we cannot say the amount awarded constitutes an abuse of the trial judge’s discretion.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

. LSA-C.C. Art. 146(C)(2) states:
"The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
(3) For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court may direct that an investigation be conducted."

. According to the November, 1983 agreement between the parties, the father was to have overnight visitation with the children on Tuesdays, Fridays and alternate weekends during the entire year.

. The November 7, 1983 agreement between the parties provided for the father’s total payment of S500.00 per month, including tuition, hospitalization and support.